UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDDIE W. GRANT, JR, | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3-08-cv-1954 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CONNECTICUT DEPARTMENT OF | : | |
| CORRECTION, | : | JUNE 22, 2010 |
|    Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 21)**

**I.   INTRODUCTION**

Plaintiff, Eddie W. Grant, Jr. ("Grant"), has brought this action against his employer, the Connecticut Department of Correction ("DOC"), alleging that he was wrongfully suspended and transferred following an August 31, 2007 incident.  That incident involved an inmate's death which followed her transport to a DOC facility by Grant and his partner.  Specifically, in his Complaint, Grant alleges racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), codified at Conn. Gen. Stat. § 46a-60(a)(1).  See Complaint ("Cmplt.") (Doc. No. 1) at 1.  Grant also alleges retaliation in violation of Title VII and the CFEPA.  See id. at 3-4.

The DOC has moved for summary judgment on both the discrimination and retaliation claims.  See Motion for Summary Judgment ("Mot. for Summ. Judg.") (Doc. No. 21).  For the reasons stated below, the DOC's Motion is granted.

-1-

## II.     STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See FED R. CIV. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. National R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting FED. R. CIV. P. 56(e)).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008) (stating that a non-moving party must point to more than a mere "'scintilla'" of evidence in order to defeat a motion for summary judgment) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

## III. FACTUAL BACKGROUND[1]

Eddie Grant is African-American and is presently employed as a correction officer by the State of Connecticut DOC. See Defendant's Local Rule 56(a)(1) Statement ("L. R. 56(a)(1) Stmt.") at ¶ 1.  He is currently assigned to the Correctional Transportation Unit ("CTU" or "unit").  Id.  Grant has been employed by the DOC since 1990, and has been assigned to this unit since September 2, 2005.  Id. at ¶¶ 1-2. Grant's duties in the CTU include transferring inmates from lockup to prison, from court to correctional facilities, or from prison to halfway houses or discharge locations.  Id. at ¶¶ 3-4.

On August 31, 2007, Grant was partnered with Edward O'Reardon, who is also a correction officer within the CTU of the DOC.  Id. at ¶¶ 5-6.  O'Reardon is Caucasian. The two were tasked with transporting a group of female inmates from the Union Avenue Detention Center in New Haven, Connecticut, to the York Correctional Institution in Niantic, Connecticut.  Id. at ¶ 8.  Grant stated that his responsibilities on that day were to drive the bus and chain and restrain the inmates, whereas O'Reardon's job was to identify the inmates, take care of paperwork, perform the count of inmates, and handle whatever properties the inmates may have accumulated at their point of arrest.  Grant Dep., Exh. 1 to Mot. for Summ. Judg., at 20:4-10.  In practice, those responsibilities sometimes blended, and when "something needs to get done, [CTU officers] don't ask but we just do it basically."  Id. at 22-23.

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by the parties and supported by evidence as true, and resolves disputed facts in favor of the party against whom the motion under consideration is made.

At one point during the transport, a judicial marshal gave Grant a loose bottle of pills that belonged to one of the inmates being transported. L.R. 56(a)(1) Stmt. at ¶ 9. Grant secured the vial in his pocket in order to protect it from being taken by an inmate. Plaintiff's Local Rule 56(a)(2) Statement ("L.R. 56(a)(2) Stmt.") at ¶ 9. Upon arrival at York Correctional Institution, O'Reardon took the paperwork and relevant property into the prison, while Grant waited on the bus with the inmates until he could escort them into the facility. Id. at 5. Following completion of the transport, Grant was informed that one of the inmates he had transported had died after arriving at the York Correctional Institution. Id. at ¶ 11. As requested, Grant wrote a report about the incident involving the inmate's pills. Id. at ¶ 12.

As a result of the inmate's death, the DOC undertook an internal investigation of the matter pursuant to Administrative Directive 1.10. L.R. 56(a)(1) Stmt. at ¶¶ 13-14. The collective bargaining agreement that governs the terms of Grant's employment provides that an employee may be placed on a leave of absence or reassigned to an alternative assignment during an investigation. In September 2007, Grant was transferred from the CTU to an administrative post at the Cheshire Central base pending the results of the investigation. O'Reardon was not transferred. Id. at ¶¶ 15, 17. As of September 2007, the DOC had no indication that O'Reardon had any role in the handling of the deceased inmate's medication. LaJoie Aff., Exh. 4 to Mot. for Summ. Judg., at ¶ 13.

The DOC did not reduce Grant's pay while the investigation into the events of August 31, 2007, was pending. Grant Dep. at 72:15-24. However, although the DOC allowed Grant to perform some overtime work within his transferred position, Grant was

denied several days of overtime from September 2007 to March 2008. L.R. 56(a)(2) Stmt. at ¶ 25. Grant filed fourteen grievances relating to his overtime pay. L.R. 56(a)(1) Stmt. at ¶ 27. Each of these grievances was denied. Id.

On March 13, 2008, Grant was informed by the DOC that a pre-disciplinary hearing would be held in order to determine if Grant or O'Reardon violated the DOC's Administrative Directives during the August 31, 2007 incident. Id. at ¶ 29. Grant was offered union representation and was allowed to present mitigating factors. Id. at ¶ 30. Following the hearing, Grant was found to have violated provisions of the Administrative Directive ("A.D.") that relates to employee conduct, specifically A.D. 2.17 sections 5A-4, 14, 18, 26, and 28. Id. at ¶¶ 28, 31-32. The investigation report concluded that on August 31, 2007, Grant did not "remain alert, aware of, and responsive to the surroundings at all times," did not "maintain good stewardship of all state property and equipment," did not "cooperate fully and truthfully in any inquiry or investigation conducted by the Department of Correction," and intentionally withheld information necessary for the completion of an investigation. January 25, 2008 Investigation Report, Exh. 9 to Mot. for Summ. Judg., at 13-14. O'Reardon was found to have violated A.D. 2.17 sections 5A-4, and 19. Id. at 15.

Grant received a five-day suspension for his role in the August 31, 2007 events and their aftermath. In addition to the suspension, Grant was placed on desk duty for twenty-eight days. Id. at ¶ 36-37. O'Reardon was given a one day suspension and was not placed on desk duty. L.R. 56(a)(2) Stmt. at ¶ 11. Grant was reassigned back to his regular post with the CTU in May 2008. He brought this lawsuit against the DOC on December 23, 2008.

**IV.    DISCUSSION**

     A.    <u>Discrimination Claim</u>

Title VII and CFEPA discrimination claims are both analyzed under the burden-shifting framework set out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  See <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 225 (2d Cir. 2004); <u>Curry v. Allan S. Goodman, Inc.</u>, 286 Conn. 390, 407 (Conn. 2008) (Connecticut antidiscrimination statutes should be interpreted "in accordance with federal antidiscrimination laws.").  Under this framework, Grant must first establish a prima facie case of racial discrimination.  <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000).  If he does so, the burden shifts to the DOC to articulate a legitimate, non-discriminatory reason for its actions.  <u>Id.</u>  Then, if the DOC articulates such a reason, the burden shifts back to Grant to prove that discrimination was the real reason behind her employer's actions.  <u>Id.</u>  On a motion for summary judgment, the plaintiff must "establish a genuine issue of material fact either through direct, statistical, or circumstantial evidence as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision."  See <u>Gallo v. Prudential Residential Servs. Ltd. P'ship</u>, 22 F.3d 1219, 1225 (2d Cir. 1994).

         1.    Prima Facie Case

To establish a prima facie case of discrimination, Grant must demonstrate: (1) that he is part of a protected class; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) that the circumstances surrounding that employment action give rise to an inference of discrimination.  <u>Abdu-Brisson v.</u>

Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).  The Second Circuit has "often emphasized [that] the burden of establishing this prima facie case in employment discrimination cases is 'minimal.'"  McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001).  Nonetheless, the plaintiff still has some burden to come forward with sufficient, admissible evidence.  See Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 65 (2d Cir. 1997).

In this case, there is no real dispute that Grant satisfies the first two elements.  Grant is a member of a protected class and was qualified for his position within the CTU of the DOC.  With respect to the third requirement, "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment."  Galabya v. New York City Board of Education, 202 F.3d 636, 640 (2d Cir. 2000).  Grant has suffered such an adverse employment action.  Although transfer to an administrative post need not be deemed adverse, the record reflects that Grant was denied overtime opportunities that would otherwise have been available to him.  Additionally, Grant received a five-day suspension from the DOC.

Whether Grant has demonstrated that the circumstances surrounding the employment action give rise to an inference of discrimination is a more difficult question.  One way that a plaintiff can create an inference of discrimination is by introducing evidence that similarly situated individuals of a different race were treated differently.  See, e.g., Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999).  These individuals need not be identically situated to the plaintiff to be appropriate reference points.  However, they do need to be similarly situated in all material respects  Id.

Grant contends that O'Reardon qualifies as a similarly situated individual. Grant further contends that the fact that O'Reardon, a Caucasian DOC officer, received different treatment than Grant, an African-American officer, regarding the August 31, 2007 incident gives rise to an inference of discrimination. Although the DOC contends that the disparate treatment of Grant and O'Reardon was due to the material differences in their roles in the August 31, 2007 incident, the court concludes that the evidence of the disparate treatment is sufficient to satisfy Grant's "minimal" burden of establishing a prima facie case. McGuinness, 263 F.3d at 53.

        2.        DOC's Legitimate Nondiscriminatory Reason

Because Grant has established a prima facie case, the burden shifts to the DOC to articulate a legitimate nondiscriminatory reason for Grant's adverse employment action. The DOC asserts that Grant was transferred to an administrative post while the investigation was pending on account of the fact that he was the primary handler of the vial of pills which were at the center of the August 31, 2007 incident. Although Grant claims that O'Reardon should have been placed on administrative leave as well, the DOC has stated that, at the time of the investigation, it had no indication that O'Reardon had any role in handling the deceased inmate's medication. LaJoie Aff. at ¶ 13. Furthermore, the DOC argues that Grant received his five-day suspension following the investigation solely due to the role he played in the 2007 incident, specifically his violation of A.D. 2.17 sections 5A-4, 14, 18, 16, and 28. The defendant has met its burden of coming forward with a legitimate nondiscriminatory reason: a rational trier of fact could conclude that the DOC had an honest belief that Grant had engaged in conduct warranting administrative transfer and suspension. The DOC has thus met its

burden of production under McDonnell Douglas's second step.

      3.    Pretext

The court must therefore examine the record to determine whether Grant can satisfy his burden of persuasion on the ultimate issue. At the summary judgment stage, Grant must raise a genuine issue of material fact as to whether the DOC's stated legitimate reason is a mere pretext for discrimination. He must also raise an issue of fact as to whether it is more likely than not that the DOC transferred and suspended him because of his race. See Kerzer v. Kingley Manuf., 156 F.3d 396, 402 (2d Cir. 1998).

A plaintiff may demonstrate pretext by demonstrating discrepancies in the employer's story. See, e.g., Norville v. Staten Island Univ. Hosp., 196 F.3d at 97-98; EEOC v. Ethan Allen, Inc., 44 F.3d 116, 120 (2d Cir. 1994). Here, however, Grant has pointed to no such discrepancies in the DOC's asserted, legitimate nondiscriminatory reason for the adverse employment action. Grant merely argues that "a jury probably would conclude in this case that neither the plaintiff nor the comparator did anything wrong and that the charges against both of them were motivated by something other than guilt." Opposition at 9. He offers no evidence to support this argument. Furthermore, the DOC has asserted that Grant received a more severe disciplinary action both because it initially had no evidence that O'Reardon played any role in the handling of the inmate's medication, and because when the investigation ultimately revealed O'Reardon did violate certain Administrative Directives, those violations were both less numerous and less severe than those of Grant. Grant has offered no evidence whatsoever to demonstrate that this explanation for the DOC's actions is

pretextual.

The real question in this case is not whether Grant was wrongly transferred or suspended following the August 31, 2007 incident. It is not the role of this court, in this proceeding, to stand in judgment of the appropriateness of the DOC's internal disciplinary measures. Instead, the issue in this case is whether Grant can link the circumstances of his adverse employment actions to racial discrimination. Grant has not introduced any direct or circumstantial evidence that creates a genuine issue of material fact that the DOC's explanation for its actions is pretextual, and that it in fact treated him as it did on account of his race. Therefore, the DOC's Motion for Summary Judgment is granted as to the discrimination claims.

B.      Retaliation Claim

To establish a prima facie case of retaliation under Title VII or the CFEPA, a plaintiff must adduce sufficient evidence that would permit a rational trier of fact to find that (1) he participated in protected activity; (2) the defendant was aware of that activity; (3) the defendant took a materially adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action, that is, that a retaliatory motive played a role in the adverse action. Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-206 (2d Cir. 2006); Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). If the plaintiff meets the initial burden of these four elements, the burden shifts to the employer to articulate a legitimate reason for its actions. Jute, 420 F.3d at 173. If the employer articulates a legitimate reason, then the burden shifts back to the plaintiff to prove that the adverse employment action was motivated by retaliation.

In this case, Grant asserts that the DOC transferred and suspended Grant in retaliation for the fact that he had filed an administrative complaint alleging unlawful employment discrimination against the DOC.  See Cmplt. at ¶¶ 17, 18.  The first three elements required for establishing a prima facie claim have been met.  Grant's complaint against the DOC was protected activity, the DOC was aware of that activity, and Grant's transfer and suspension constitutes an adverse employment action.

The fourth element requires more extensive analysis, but Grant can also satisfy that element.  "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  Gordon v. New York City Board of Education, 232 F.3d 111, 117 (2d Cir. 2000) (citing Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993) (citations omitted)).  To establish causality by temporal proximity alone, the proximity between the protected activity and the adverse employment action must be very close.  See Clark County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001).  The Second Circuit has explained, however, that "[a]n inference of discriminatory intent may be established by, inter alia, . . . 'the sequence of events leading to the plaintiff's discharge.'"  Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009) (citations omitted).  Evidence of a series of events that links the protected activity to the adverse action, even where those events occur across an extended period of time, may be sufficient to create an issue of fact even where no single event could form the basis of a retaliation claim.  See, e.g., McInnis v. Town of Weston, 375

F.Supp. 2d 70, 85 (D. Conn. 2005) (acts occurring over a seven-month period); see also Jute, 420 F.3d at 170, 177 (concluding that, in deciding whether an issue of fact as to retaliation exists, a court may consider a series of retaliatory acts that occurred over a two year period preceding an actionable adverse employment action, even when those acts themselves are not actionable on statute of limitations grounds).

In this case, the protected activity that Grant claims caused the DOC to take the adverse employment action was the complaint Grant filed against the DOC *after* his September 13, 2007 transfer to an administrative post. See Cmplt. at ¶¶ 13, 17 ("The plaintiff thereupon filed a complaint of unlawful employment discrimination against the defendant."). In light of the fact that the transfer to an administrative post preceded the protected activity, the protected activity cannot be said to have caused that particular adverse employment action. However, Grant remained in his administrative post for a considerable period of time and was ultimately suspended for five days. Because of the temporal proximity of these adverse employment actions to the protected activity, Grant has established a prima facie retaliation claim.

Nonetheless, the DOC has put forth a legitimate reason for its actions, namely, the role Grant played in the August 31, 2007 incident, and the role he played in the investigation of that incident. As discussed in greater detail, supra, at 9-10, Grant has not established a genuine issue of material fact that this legitimate reason is pretextual. Further, the record is devoid of affidavits, depositions, documents, or any other evidence from which a rational trier of fact could conclude that Grant's suspension was motivated by retaliation. DOC is therefore entitled to summary judgment on the retaliation claim.

## V. CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment (Doc. No. 21) is hereby **GRANTED**.  The clerk is directed to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 22nd day of June, 2010.


      /s/ Janet C. Hall
Janet C. Hall
United States District Judge